**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/1/2025
```

UNITED STATES OF AMERICA,

            - against -

DAVIT YEGHOYAN,

                       Defendant.

**20 CR 652 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Defendant Davit Yeghoyan ("Yeghoyan") moves *pro se* for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Section 3582"). He asserts that his suffering from ulcerative colitis constitutes an extraordinary and compelling reason warranting relief. (See "Motion" or "Mot.", Dkt. No. 440.) On March 29, 2024, this Court denied Yeghoyan's first request for compassionate release, which he also brought on the basis of his alleged medical condition. (See Dkt. Nos. 368, 385.) For the reasons detailed below, the motion is **DENIED**. Yeghoyan is not eligible for compassionate release because he has failed to establish an extraordinary and compelling reason pursuant to Section 3582 and the United States Sentencing Guidelines (the "Sentencing Guidelines") Policy Statement 1B1.13(b) ("Policy Statement 1B1.13(b)"). See 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(b).

## I. BACKGROUND

Yeghoyan is currently serving forty-five months' imprisonment for racketeering conspiracy. He is incarcerated at the Federal Medical Center Devens ("FMC Devens") – an administrative security federal medical center – and has a projected release date of December 22, 2025. Although Yeghoyan has served nearly his full term of imprisonment, he argues that compassionate release is warranted in his case because of his compromised medical condition, the inadequate and delayed care he alleges he has received, his non-citizen status, and evidence of rehabilitation.

### A. YEGHOYAN'S FIRST MOTION FOR COMPASSIONATE RELEASE

On February 5, 2024, Yeghoyan filed a motion seeking compassionate release pursuant to Section 3582, citing significant medical concerns, and what he describes as the adverse conditions of his confinement. (See Dkt. No. 354.) After the Court concluded further briefing was necessary to clarify issues presented in the motion, on February 28, 2024, Yeghoyan filed an amended motion, alleging that prison officials' mismanagement of his ulcerative colitis amounted to an "extraordinary and compelling" reason sufficient to warrant relief under Section 3582. (See Dkt. No. 368.) The Court denied that motion on March 29, 2024. (See Dkt. No. 385.)

In denying Yeghoyan's motion, the Court acknowledged that while "there is no doubt that Yeghoyan's ulcerative colitis [may constitute] a serious medical condition that causes him significant suffering, . . . as treated by medical professionals working at or in conjunction with FMC Devens, [the condition] does not substantially diminish his ability to care for himself." (Id. at 13-14.) Furthermore, while the Court agreed that Yeghoyan "require[d] long-term and specialized medical care," the Court found that FMC Devens was "providing adequate treatment for Yeghoyan's ulcerative colitis" and was additionally "one of the few BOP facilities equipped to provide a relatively high level of care to inmates." (Id. at 16-18.) Relying in part on a letter submitted by a clinical director stating that Yeghoyan "continues to be seen by multiple specialists" and on medical records that showed "FMC Devens staff has hospitalized Yeghoyan both within FMC Devens and outside of the prison when necessary," the Court determined that FMC Devens was providing Yeghoyan sufficient care. (Id. at 17-18.)

Because the Court found that Yeghoyan had not set forth extraordinary and compelling reasons warranting early release, the Court did not decide whether the considerations set forth in 18 U.S.C. § 3553(a) ("Section 3553(a)") weighed in favor of a sentence reduction. (Id. at 12.)

3

B.   YEGHOYAN'S ALLEGED SUBSEQUENT MEDICAL TREATMENT

Since the denial of his first motion for compassionate release, Yeghoyan alleges that he has experienced "detrimental long-term side-effects of his prescribed medication due to the timeline in which such medication was prescribed." (Mot. at 2.) Yeghoyan states that he contacted medical staff on April 9, 2024, about the need to discuss the staff's purported failure to "act urgently with regard to his prescribed medications and infusion treatments" but did not receive a response until April 23. (Id.) During the intervening days, Yeghoyan asserts medical staff "advised him that it was his responsibility to manage such matters." (Id.) He received a colonoscopy on April 19, after which he claims he "complained to medical staff about the confusing directives about his prison-based prescribed medications and detrimental delays." (Id.)

Yeghoyan alleges he again complained at the end of May to the staff doctor about his pain and perceived delays in discussing his medical issues. (See id.) He also states that on June 14 he was seen by New England Consultants in Gastroenterology. Yeghoyan alleges that they informed prison staff that he had lost fifty pounds, had bloody bowel movements, and had developed antibodies to his medications. (See id.) According to Yeghoyan, he was evaluated on July 2

4

by medical staff who found little improvement regarding his abdominal pain and noted that his antibody levels were diminishing his medication's effect. (See id.) Yeghoyan asserts he made numerous complaints to medical staff about continued delays in care and mismanaged medication dosages until August 30, when medical staff obtained a second medical opinion. (See id.) Yeghoyan states that he met with a gastroenterologist on November 14 who recommended a follow-up in a few months "despite his wellness complaints and existing blood test evidence showing extremely high antibodies to his prescribed medications for his ulcerative colitis." (Id.) Yeghoyan alleges that the doctor, despite Yeghoyan's complaints of abdominal pain and blood in his stool, concluded that urgent testing was unnecessary. (See id.)

Yeghoyan further asserts that on January 27, 2025, he sent an email to medical staff about his continued symptoms. (See id.) He was transported to Beth Israel Community Hospital the next day and admitted for testing, after which he was allegedly told that "antibodies in his blood suggested that prison officials had delayed his testing for too long and that corrective surgery was now necessary." (Id.) Yeghoyan states that he returned to FMC Devens after surgery on February 26 and was given supplies and information about self-

5

care. (See id.) Yeghoyan claims that he continues to "experience numerous delays that impede his self-care," including "the lack of necessary medical supplies and directions about his diet," and that he continues to suffer from a "lack of necessary, timely, and adequate . . . care required for his condition." (Id.)

In light of these developments, Yeghoyan filed this motion for a sentence reduction on May 30, 2025. (See generally Motion.) He filed supplemental facts and legal authority on July 23. (See "Supplemental Facts" or "Suppl.", Dkt. No. 444.) The Government filed a response on August 11. (See "Opposition" or "Opp'n", Dkt. No. 446.) Yeghoyan filed reply papers on September 3. (See "Reply", Dkt. No. 447.)

## II.  LEGAL STANDARD

Section 3582 provides that a court may reduce a defendant's "term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

Policy Statement 1B1.13(b) governs whether there are "extraordinary and compelling" reasons warranting relief under Section 3582. See United States v. Feliz, No. 16 Cr. 809, 2023 WL 8275897, at *4 (S.D.N.Y. Nov. 30, 2023); 18

6

U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(b). Policy Statement 1B1.13(b)(1) states that extraordinary and compelling reasons exist where the defendant is suffering from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" or from "a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(B)-(C).

Finally, even where extraordinary and compelling reasons exist, "the court must also consider 'the factors set forth in section 3553(a) to the extent that they are applicable' before it can reduce the defendant's sentence," United States v. Jones, 17 F.4th 371, 374 (2d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)), and the defendant must have "fully exhausted all administrative rights to appeal" as set forth in the statute. 18 U.S.C. § 3582(c)(1)(A).

### III. DISCUSSION

Yeghoyan argues that his medical circumstances constitute an extraordinary and compelling reason under

Policy Statement 1B1.13(b)(1)(B)(i), (b)(1)(C), and (b)(4).[1] warranting a sentence reduction pursuant to Section 3582. (See Mot. at 5.) He further argues that Section 3553(a)'s considerations weigh in favor of a reduced sentence. (See id. at 7.)

In response, the Government argues that Yeghoyan's Motion "fails because he has not met the burden of showing that his current medical condition constitutes an extraordinary and compelling reason for a sentence reduction" and that Section 3553(a)'s considerations – specifically the serious nature of the crime and the need for punishment and deterrence – weigh against granting compassionate release. (See Opp'n at 6–7.)

For the reasons stated below, the Court holds that Yeghoyan has not set forth extraordinary and compelling reasons warranting early release under Policy Statement 1B1.13(b). The Court thus need not decide whether Section 3553(a) weighs in favor of a sentence reduction.[2]

---

[1] The Court analyzes Yeghoyan's "catch-all" arguments under Policy Statement 1B1.13(b)(5), not (b)(4). Policy Statement 1B1.13(b)(4) concerns victims of abuse and does not relate to Yeghoyan's arguments.

[2] The Government does not oppose Yeghoyan's motion on the basis that he has not fully exhausted his administrative remedies as required by Section 3582.

A.   POLICY STATEMENT 1B1.13(b)(1)(B)(i)

Policy Statement 1B1.13(b)(1)(B)(i) states that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes an extraordinary and compelling reason for a sentence reduction under Section 3582. U.S.S.G. § 1B1.13(b)(1)(B).

Yeghoyan first attempts to support his argument by pointing to a 2024 Office of the Inspector General ("OIG") investigation report detailing a shortage of healthcare employees at FMC Devens and a *Boston Globe* editorial Yeghoyan asserts indicates the "continued inadequate medical care and delays" at the facility. (Mot. at 5; Suppl. at 1.) Yeghoyan then cites his entire medical record as evidence of "medical care that continuously falls short of . . . an adequate standard of care" and emails he alleges demonstrate "significant delays in communications . . . and the transferring of related records." (Mot. at 5.)

The Government acknowledges that "Yeghoyan's ulcerative colitis . . . qualifies as a serious medical condition from which Yeghoyan is not expected to recover[]" but argues that, "[a]s treated by the medical professionals working at and

9

with FMC Devens . . . the condition does not 'substantially diminish' Yeghoyan's ability to provide self-care." (Opp'n at 7.) The Government notes that Yeghoyan "is housed in a regular housing unit, receives a regular diet, and . . . independently care[s] for himself even post-surgery." (Id.)

Here, the Court agrees that Yeghoyan's ulcerative colitis does not substantially diminish his ability to care for himself. The evidence Yeghoyan cites – including his emails with medical personnel at FMC Devens – illustrates, as this Court previously found, that he is able to communicate his complaints often and effectively. And while the Court does note that responses to emails were sometimes delayed, staff often directed Yeghoyan to "go to sick call" for medical emergencies. ("Records," Dkt. 451 at 75.) Furthermore, Yeghoyan's chief complaint – a delay in increasing his medication dosage – while serious, still falls short of the "substantially diminishes" standard.

For example, the matter at issue here is distinguishable from that involved in the two cases on which Yeghoyan relies — United States v. Robles, No. 19 CR. 4122, 2022 WL 229362 (S.D. Cal. Jan. 26, 2022), and United States v. Derentz, 608 F. Supp. 3d 189 (E.D. Pa. 2022). In Robles, the defendant suffered five strokes in eighteen months and needed open-heart surgery to repair a hole in her heart, which the Bureau

10

of Prisons had yet to schedule. 2022 WL 229362, at *2. In Derentz, although physicians recommended a follow-up appointment for defendant's eye condition in one week, the prison officials delayed "approximately a month and a half" leading to a "total retinal detachment" and "contribut[ing] to Derentz becoming partially blind." 608 F. Supp. at 193. In both cases, serious delays created life-threatening or life-altering circumstances. Yeghoyan asserts his "life-changing" surgery could have been prevented by timely testing, but the medical records he cites do not substantiate such a claim. (See Mot. at 3 (generally referencing pages 147-227 of his medical records).) Indeed, Yeghoyan's records reflect that he often received medical attention or hospital admission quickly, as evidenced by his transportation to Beth Israel Community Hospital upon reporting to sick call on January 28, 2025. (See id.; Records at 147.) Other records in Yeghoyan's medical history also support the Government's contention that Yeghoyan's condition does not "substantially diminish" his ability to care for himself. For example, Yeghoyan sent an email to staff on September 5, 2024, asking for a consultation "with a doctor that's not at [a specific center]," to which staff responded – the very next day – that they "put in another consult" with a gastroenterologist for a "second opinion" regarding treatment options. (Records at 88.)

11

Yeghoyan has thus not met his burden of showing extraordinary and compelling reasons for early release under Policy Statement 1B1.13(b)(1)(B)(i).

B.   POLICY STATEMENT 1B1.13(b)(1)(C)

Yeghoyan additionally argues that his ulcerative colitis is "a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). As the Court previously found, it is not debated that Yeghoyan's condition requires long-term and specialized medical care and that a failure to treat ulcerative colitis could lead to a serious deterioration in health or death. (See Dkt. No. 385.) The question, instead, is whether adequate treatment is "being provided" at FMC Devens. U.S.S.G. § 1B1.13(b)(1)(C).

Adequate treatment means treatment sufficient to avoid a serious deterioration in health or death — not treatment better than Yeghoyan could or would receive outside the prison system. See United States v. Teman, No. 19 Cr. 696, 2024 WL 262781, at *6 (S.D.N.Y. Jan. 24, 2024). Here, the Court finds that the care Yeghoyan is receiving at FMC Devens meets the standards the Sentencing Commission set forth.

Again, Yeghoyan's primary complaint is delay in care – but as his medical records reveal – Yeghoyan has received the necessary specialized treatment for his condition, including care by doctors outside of FMC Devens. (See, e.g., Records at 147 (detailing his emergency admission to Beth Israel Community Hospital).) He has been routinely monitored by physicians, prescribed various medications and alternative medications, undergone the recommended procedures to treat his condition, and on some occasions has been provided second medical opinions. (See, e.g., Records at 108-13, 121.)

The Court finds the cases Yeghoyan cites in support of his argument unpersuasive. For example, in United States v. Aguilera, the defendant had gone twelve months without seeing an eye specialist. No. 19 Cr. 1955, 2024 WL 1774009, at *1 (S.D. Cal. Apr. 23, 2024)). And in United States v. Samuel, the defendant waited ten months to receive the proper medical care and testing. Cr. No. ELH-16-0117, 2023 WL 8650366, at *12 (D. Md. Dec. 14, 2023). Here, FMC Devens has not subjected Yeghoyan to any such comparable, extreme delays. His records indicate that he waited approximately five months to receive an appointment for a second opinion, but FMC Devens did not prevent access to care or treatment during that time. (See Records at 82-117.) Therefore, the Court concludes that the facility is providing adequate treatment for Yeghoyan's

ulcerative colitis under the standard set forth by Policy Statement 1B1.13(b)(1)(C).

C.   POLICY STATEMENT 1B1.13(b)(5)

Finally, Yeghoyan argues that the Court should consider two independent circumstances warranting Section 3582 relief under the catch-all provision in Policy Statement 1B1.13(b)(5). (See Mot. at 6.) That provision states that a sentence reduction might be appropriate if the defendant puts forward reasons for early release that are "similar in gravity" to the types of circumstances — such as terminal illnesses, serious family issues, or BOP abuse — specifically enumerated elsewhere in the Policy Statement. U.S.S.G. § 1B1.13(b)(5). Those reasons can be "considered by themselves or together with" circumstances falling into the Policy Statement's specifically enumerated categories. Id.

First, Yeghoyan urges the Court to consider his non-citizen status as a relevant circumstance, citing authority from a federal district court in California - United States v. Pinal-Maldonado, No. 17 Cr. 3431-MMA-2, 2023 WL 6931783, at *1 (S.D. Cal. Oct. 19, 2023) - and one decision in this District considering immigration status in its extraordinary and compelling reasons analysis. (Mot. at 6.)  That case - United States v. Bennett – however, was decided in May 2020, during the COVID-19 pandemic. No. 05 Cr. 1192-1, 2020 WL

14

2539077, at *1-2 (S.D.N.Y. May 18, 2020). "U.S. Immigration and Customs Enforcement ha[d] lodged an immigration detainer on [defendant]" and he would be deported "forthwith upon his release." Id. Notably, in granting the motion, the court emphasized defendant was "in the category of people for whom COVID-19 pose[d] a far greater risk of death." Id.

As a general matter, courts hold that similar immigration consequences do not meet the extraordinary and compelling standard. See, e.g., United States v. Lisyansky, No. 11 Cr. 986, 2023 WL 3571161, at *2 (S.D.N.Y. May 18, 2023) ("Defendant contends that because he is subject to an immigration detainer, he is ineligible for transfer to a halfway house . . . [but] [d]efendant's immigration status does not constitute an extraordinary or compelling circumstance for his release."); United States v. Bello, No. 13 Cr. 559, 2024 WL 2962169, at *6 (E.D.N.Y. June 12, 2024) (finding that "ineligibility for programs [because of citizenship status] is not sufficient on its own to show that extraordinary and compelling reasons warrant a reduction in sentence" but may, instead, provide support for rehabilitation).

Second, Yeghoyan argues that this Court should consider that he has served the majority of his sentence. (See Mot. at 6.) While Policy Statement 1B1.13(b) authorizes courts to

15

factor in such a circumstance, the Court – given the lack of any other extraordinary and compelling reasons – declines to find Yeghoyan's time served sufficient to support compassionate release.

The Court thus concludes that Yeghoyan has not met his burden under Policy Statement 1B1.13(b). Therefore, the Court need not decide whether Section 3553(a) weighs in favor of a sentence reduction, and Yeghoyan's motion pursuant to Section 3582 is **DENIED**.

## IV. ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion (see Dkt. No. 440) filed by defendant Davit Yeghoyan ("Yeghoyan") requesting a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is **DENIED** because Yeghoyan has not established an extraordinary and compelling reason warranting relief.

The Clerk of Court is respectfully directed to mail a copy of this Decision and Order to Davit Yeghoyan, Register No. 21120-509, Federal Medical Center Devens, P.O. Box 879, Ayer, MA 01432, and to note service on the docket.

**SO ORDERED.**

Dated:    1 October 2025
         New York, New York

Victor Marrero
U.S.D.J.